**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.L.-1 and B.L.-2**

**No. 21-0508** (Barbour County 18-JA-111 and 18-JA-112)

## MEMORANDUM DECISION

Petitioner Mother P.W., by counsel Ira A. Richardson, appeals the Circuit Court of Barbour County's May 11, 2021, order terminating her parental rights to B.L.-1 and B.L.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Allison C. Iapalucci, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and in denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Beginning in November of 2018 and ending in February of 2020, the DHHR filed a series of abuse and neglect petitions and amended petitions alleging, in relevant part, that the children were the victims of domestic violence and observed domestic violence between the parents. During one recent altercation, the children's paternal grandmother had to remove the children from the home because petitioner and the father engaged in a physical altercation. Petitioner "continued to throw household items at [the father] as he and the [p]aternal [g]randmother were getting the children into the car to leave the home." As the car was backing out of the driveway, petitioner smashed the car's windshield with a heavy object. Petitioner was later arrested "on [an] unknown

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as B.L.-1 and B.L.-2 throughout this memorandum decision.

warrant[].” The various petitions also alleged that petitioner had a history of substance abuse that impaired her ability to properly parent the children and that she lied to the multidisciplinary team (“MDT”) when she indicated that she was employed but had, in fact, been terminated from her employment. The DHHR also alleged that petitioner permitted the children to be in contact with a sex offender. Finally, the DHHR alleged that petitioner permitted the children to have telephone contact with the father while he was incarcerated, in violation of the court's prohibition against such contact. During these calls, petitioner also formulated a plan with the father to subvert the abuse and neglect process by having him voluntarily relinquish his parental rights to the children so that she could continue her relationship with him and return the children to his care at a later date.

At an adjudicatory hearing in July of 2020, petitioner stipulated to several of the allegations against her. The circuit court ultimately adjudicated her as an abusing and neglecting parent and noted that the matter had proceeded for such an extended time as a result of petitioner's continued misconduct necessitating the five amended petitions. The court remarked that, had she focused on improvement during the proceedings, petitioner “would have made forward progress and likely been done by now.” Instead, the court found that she “deceive[d] the [c]ourt and forced the Department to put its efforts into catching her in her deception.” Despite her efforts to thwart the proceedings, both the DHHR and guardian agreed to permit petitioner to participate in a post-adjudicatory improvement period. The court granted petitioner a post-adjudicatory improvement period, “largely due to the advocacy” of the guardian.

In February of 2021, the guardian filed a report in which she asserted that petitioner had been participating sporadically in her services. Although petitioner had obtained housing, the guardian noted that she was also evicted several times during the proceedings and, therefore, lacked stable housing. Further, the guardian indicated that petitioner blamed several individuals, including the guardian, for her position in the proceedings. According to the guardian, petitioner continued her relationship with the father, despite having previously indicated that she would end the relationship. Petitioner maintained that all the domestic violence was her fault and advocated for the father to be given another chance, despite the fact that he never participated in any aspect of the case and walked out of the lone MDT meeting he attended. The guardian also asserted that petitioner was removed from services for verbally assaulting a provider, was verbally abusive to members of the MDT, and harassed the children's foster placement on social media. Ultimately, the guardian concluded that “[t]here has been no internal shift in [petitioner's] thinking, and despite a great deal of therapy, she cannot seem to right the ship.” Based on the foregoing, the guardian recommended termination of petitioner's parental rights.

The court then held a series of dispositional hearings, culminating in the final dispositional hearing in May of 2021. During the hearings, petitioner's visitation provider testified that petitioner's last visit with the children was in January of 2021 and that the visit was terminated because of her continued discussion of the abuse and neglect case and the attorneys involved in the matter. Petitioner also admonished one of the children not to call the foster mother “mom.” The court also heard testimony from the individual who administered petitioner's drug screens, including a screen in March of 2021 where petitioner tested positive for methamphetamine, amphetamine, and marijuana. According to the witness, petitioner had not submitted to a screen since then. A DHHR worker testified that petitioner's conduct during visits had a negative impact

on the children. Specifically, after the visit where petitioner directed the children not to call their foster mother "mom," the worker called the foster mother and could hear one of the children screaming "you don't love me" in the background. According to the worker, petitioner completed parenting and adult life skills services, but did not complete her healthy relationships services. The worker explained that petitioner's honesty and insight were lacking, as evidenced by her continued communication with the children's father in violation of the court's order, who by this point had voluntarily relinquished his parental rights to the children. The worker also explained that petitioner failed to participate in therapy, as recommended by her psychological evaluation. According to the worker, petitioner lacked stable housing and had, at times, refused to provide her address to the MDT. The worker also described all of petitioner's MDT meetings as volatile and detailed one instance in which petitioner threatened a team member. According to the worker, petitioner was unable to correct the conditions of abuse and neglect and the DHHR recommended termination of petitioner's parental rights.

Based on the evidence, the court found that petitioner's situation was, at best, in the same posture as it was when the case began, although it acknowledged that "in some ways, [it is] far worse." The court cited petitioner's dishonesty, threatening behavior, and behavior during visits as indicative of her noncompliance throughout the proceedings. The court also cited petitioner's attempts to circumvent the legal process as evidencing her lack of insight into how her conduct constituted abuse and neglect. According to the court, the children's lives "cannot be put on hold to wait for [petitioner] to come around." As such, the court terminated petitioner's parental rights to the children.[2] The court also denied petitioner's request for post-termination visitation, as her visits during the proceedings had been terminated because of their negative impact on the children. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The children's father voluntarily relinquished his parental rights to the children. The permanency plan for the children is adoption in the current foster home.

On appeal, petitioner first argues that the circuit court erred in terminating her parental rights because she should have been entitled to a less-restrictive disposition. According to petitioner, the court erred in failing to grant disposition under West Virginia Code § 49-4-604(c)(5) and did not take into account her "exhaustive efforts to provide a safe and caring household for the minor children." Simply put, petitioner's argument is without any support in the record or the law. While it may be true that petitioner took some steps to comply with services below, the record on the whole shows that petitioner's situation deteriorated substantially during the proceedings because of her own inappropriate conduct. This included her threats toward MDT members, her generally volatile nature during MDT meetings, her failure to complete all necessary services designed to remedy the conditions of abuse and neglect, her dishonesty in attempting to circumvent the abuse and neglect proceedings, her substance abuse shortly before the final dispositional hearing, and the negative impact of her inappropriate conduct during visits with the children. In short, petitioner demonstrated an almost total unwillingness to improve the abusive and neglectful conditions for which she was adjudicated. Rather than failing to consider petitioner's meager attempts to improve, as she alleges on appeal, the record shows that the court considered these facts along with the overwhelming evidence of petitioner's willful noncompliance.

Further, disposition under West Virginia Code § 49-4-604(c)(5) would have been inappropriate for several reasons. First, that subsection provides for temporary placement of children, which is contrary to the stated goal of achieving permanency for children in abuse and neglect proceedings. *See* W. Va. Code § 49-4-604(c)(5) (permitting a court to "commit the child *temporarily* to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court"); *In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007) ("Ensuring finality for these children is vital to safeguarding their best interests so that they may have permanency and not be continually shuttled from placement to placement."). Even more importantly, termination was appropriate because the record established that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and termination of her parental rights was necessary for the children's welfare.

According to West Virginia Code §49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Again, while petitioner may have complied with some services below, the record overwhelmingly shows that she failed to follow through with all services and, in fact, actively worked against reunification through her inappropriate conduct. Further, while petitioner argues that the children's placement with a grandparent obviated the need to terminate her rights, the record does not support this position. Instead, the record shows that petitioner actively sought to undermine the children's relationship with the foster family and that termination of her rights was necessary to protect the children in their placement. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less

4

restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, petitioner argues that the circuit court erred in denying her post-termination visitation with the children because she shared "an unmistakable bond" with the children and that "[i]t is believed to be in the best interests of the children to maintain a bond with their biological mother so that they may grow up with the knowledge that their mother cares for them and desires to maintain a relationship with them." Aside from lacking support in the record, these assertions, even if true, are insufficient to entitle petitioner to ongoing contact with the children. It is, of course, true that maintaining a bond with a biological parent is important for children. What petitioner fails to recognize is that her egregious conduct had a negative impact on the children and created a situation in which it was more beneficial for the children to have no ongoing contact with her. This is supported by the evidence of the negative impact her visitation had on the children during the proceedings, which ultimately resulted in her not having visited with them for several months prior to disposition.

We have previously explained as follows:

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). On appeal, petitioner points to no evidence that ongoing contact with the children would be in their best interests. Instead, the evidence shows that such contact would be detrimental to their wellbeing. As such, she is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 11, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

5

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton